UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALBA BORRELLI,

Plaintiff,

COMPLAINT

-against-

18 Civ. 0270

ORANGE REGIONAL MEDICAL CENTER,
JENNIFER BREITTENFELD, LAUREN CARBERRY,
ROBIN BRENNAN-SEIBEL, AND
DEBBIE SNYDER,

Defendants.

---

PLAINTIFF ALBALIRA GIBSON-BORRELLI, through the undersigned counsel MICHAEL D. DIEDERICH, JR., complains of the DEFENDANT ORANGE REGIONAL MEDICAL CENTER, and its aiders and abetters, as follows:

**Prefatory Statement**

This is a action for damages and injunctive relief against defendant Orange Regional Medical Center ("Defendant"), for its discriminatory termination of plaintiff's employment, in violation of, *inter alia*, the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII")( skin color, race and national origin discrimination), 42 U.S.C. § 1981 (race discrimination in the termination of Plaintiff's employment), unlawful retaliation under the aforesaid statutes, and the violation of parallel New York State law, including violation of Plaintiff's State law rights by the individual defendants as aiders and abetters.

**THE PARTIES**

1. Plaintiff Albalira Gibson- Borrelli, a/k/a Alba Borrelli, is, and was at all times relevant herein, citizen of the United States and a resident of the County of Orange, State of New York.

2. Defendant Orange Regional Medical Center (hereinafter "Defendant" or "ORMC"), upon information and belief, is and at all times relevant herein was a business corporation organized and existing under the laws of the State of New York, with located in Middletown, New York.

3. Defendant Jennifer Breittenfeld (hereinafter "Defendant Breitttenfeld" or "Breittenfeld"), upon information and belief, is and at all times relevant herein was, a resident of

the County of Orange, State of New York, and is sued herein as an "aider and abetter" under the N.Y.S. Human Rights Law.

4. Defendant Lauren Carberry(hereinafter "Defendant Carberry" or "Carberry"), upon information and belief, is and at all times relevant herein was, a resident of the County of Orange, State of New York, and is sued herein as an "aider and abetter" under the N.Y.S. Human Rights Law.

5. Defendant Robin Brennan-Seibel(hereinafter "Defendant Brennan-Seibel" or "Brennan-Seibel"), upon information and belief, is and at all times relevant herein was, a resident of the County of Orange, State of New York, and is sued herein as an "aider and abetter" under the N.Y.S. Human Rights Law.

6. Defendant Debbie Snyder (hereinafter "Defendant Snyder" or "Snyder"), upon information and belief, is and at all times relevant herein was, a resident of the County of Orange, State of New York, and is sued herein as an "aider and abetter" under the N.Y.S. Human Rights Law.

7. Defendant ORMC is an employer within the meaning of 42 U.S.C. § 2000e-(b).

## JURISDICTION AND VENUE ALLEGATIONS

8. This court has jurisdiction over this action under 42 U.S.C. § 1981, 42 U.S.C. § 2000e-5(f) and under 28 U.S.C. § 1331 and § 1343(4).

9. Venue is proper in this Court.

## FACTUAL ALLEGATIONS

### *A. Overview & Background*

10. Plaintiff, a registered nurse, was hired by ORMC on or about September 2011.

11. Plaintiff is of dark skin color, and was born in Panama.

12. At or around the time Plaintiff was hired, Defendant hired approximately 15 nurses, and of these, Plaintiff was the only Afro-American hired.

13. At her time of hire, Plaintiff was the only Afro-American or other person of color employed (or hired) as a nurse in the Emergency Department ("ER") of ORMC.

14. The several other nurses hired at the time Plaintiff was hired were all Caucasian, and Plaintiff immediately noticed the markedly predominant Caucasian percentage of nurses in the hospital and in the ER.

15. Defendant fired Plaintiff without just cause, motivated by Plaintiff's race, skin color, and national origin, and because of retaliatory animus, on or around May 10, 2017, as discussed in more detail below.

***B. Discriminatory Actions of ORMC***

16. After being hired, Plaintiff repeatedly observed bias in the workplace as a nurse where the Caucasian nurses have more privileges and are considered quickly for leadership positions and as preceptors.

17. At or around the time Plaintiff was hired, and continuing thereafter, Defendant would not consider hiring another qualified Afro-American, namely, Mary (last name to be provided), even though, upon information and belief, Mary was more qualified as a nurse than the non-Afro-Americans whom Defendant hired.

18. The situation got worse when ORMC hired Robin Brennan-Seibel (a Caucasian woman) as the manager of the ER.

19. After Ms. Brennan-Seibel became the manager, many Afro-American nurses and medical technicians were disciplined or terminated from employment based on things as simple as the "say so" (false or likely false) of Caucasian peers.

20. For example, an Afro-American medical technician, whom Plaintiff observed to be very competent in her job, was accused (Plaintiff believes falsely) by a Caucasian medical technician and then terminated without being given the opportunity to defend herself (because of this person's Afro-American race).

21. Plaintiff observed other Afro-Americans treated in this fashion, namely, treated adversely on the mere say-so of Caucasian workers, without being able to present a defense.

22. Upon information and belief, during Plaintiff's employment, Defendant fired an Afro-American nurse, Cindy Davis, without just cause and for reason motivated by Ms. Davis' race.

23. Upon information and belief, at or around the beginning of Plaintiff's employment, Defendant fired another Afro-American nurse, Karadis Tubo, for pretextual reasons motivated by Ms. Tubo's race and national origin (i.e., animosity toward an employee, like Plaintiff, with dark skin and the Caribbean/Central American national origin). Upon information and belief, Ms. Tubo

was replaced by two or three Caucasians, and was asked to trainer her successor—a Caucasian woman with clearly inferior qualifications.

24. Similarly, the HR Department of ORMC conspired with its management to fire, without just cause, a black woman from the Caribbean, Shirlette Stewart, who worked as a food service worker. The accusations against Ms. Stewart, which resulted in her termination in October 2013, were demonstrated to be utterly false at an unemployment insurance hearing.

25. The above institutional bias against black-skinned people from the Caribbean Island countries—ORMC's custom, policy and practice of discriminating against individuals with dark skin from the Caribbean—eventually became directed against Plaintiff.

26. Caucasian workers at ORMC observed this institutional bias against minorities.

27. The bias was aided and abetted by Ms. Brennan-Seibel.

28. Specifically, after Plaintiff wrote an email regarding discriminatory treatment against Plaintiff by an ER charge nurse in November 2016, Plaintiff experienced unjustified adverse job actions taken at the behest, upon information and belief, of a biased Ms. Brennan-Seibel.

29. These actions were, upon information and belief, motivated by race and national origin discrimination and reprisal.

30. This included Plaintiff being constantly ridiculed and disciplined based on the (false, misleading or inaccurate) "say so" of Caucasian individuals who, upon information and belief, have been encouraged and manipulated by Ms. Brennan-Seibel and others in management to make false accusations against Plaintiff.

31. As a consequence of the discriminatorily motivated adverse assertions (without *bona fide* evidence in support of such assertions), Plaintiff found herself the subject of unfounded disciplinary actions at ORMC.

32. The discriminatory actions toward Plaintiff at ORMC became particularly bad between November 2016 and May 2018, when Plaintiff was (informally or formally) suspended 3 times by ORMC due to unfounded allegations. *See*, below.

33. Plaintiff was the only person in the department treated in this manner (and she was one of only a few nurses of color employed by ORMC and the only Afro-American in her department born outside the United States).

34. Due to the baseless suspensions (regarding which she was told, for example, to "go home" and remain away from ORMC pending investigation), Plaintiff was deprived of her regular pay.

35. The racial discrimination against Plaintiff was ongoing.

36. It seemed to Plaintiff that anything and everything that involved a dispute or conflict of any sort between (racially prejudiced) Caucasian nurses and Plaintiff ended up with disciplinary action or threatened disciplinary action only against Plaintiff, through no fault of Plaintiff.

37. Upon information and belief, to ORMC's management and HR Department, Plaintiff's word carried no weight against the word of Plaintiff's Caucasian peers, because of management's unlawful bias.

38. Plaintiff's 3 disciplinary suspensions, each motivated by unlawful bias and each lacking any fault, misconduct or deficient performance on the part of Plaintiff, are described next.

***Use of handicapped parking—threat of discipline even though Plaintiff has a bona fide handicap***

39. As one example of the bias against Plaintiff, Plaintiff received a handicap sticker from the proper governmental agency, which she placed in her car (for her *bona fide* and documented disability).

40. Notwithstanding possessing a valid handicap sticker, Plaintiff was ticketed by ORMC security (upon information and belief, at the behest of ER management) and threated with disciplinary action.

41. In contrast to Plaintiff, there were two U.S.-born Caucasian nurses with disability stickers who parked in the same spot and left alone (i.e., not harassed and ticketed by ORMC). Moreover, their "disability" was not a disability at all—as these employees were merely obese.

***Investigatory witch hunt of late December 2016***

42. On or about December 24 - January 1, 2017, ORMC engaged in another bogus "investigation" of Plaintiff, including suspending Plaintiff from her job.

43. Thereafter, it was determined by ORMC that Plaintiff was in no way involved in the incident in question. It restored her to work, with back pay, but with no apology or explanation.

44. Upon information and belief, Plaintiff should not have been suspended in the first place, which investigation and suspension was motivated by unlawful discrimination.

45. Moreover, Plaintiff was "sent home pending investigation," but this was not ORMC's policy and practice for Caucasian nurses in comparable circumstances.

***Triage criticism regarding child—3 day suspension***

46. Plaintiff allegedly mis-triaged a child with an apparent testicular torsion.

47. However, the criticism was completely unfounded and baseless.

48. Moreover, the person doing triage was less experienced and less qualified than Plaintiff to make triage decisions.

49. Additionally, the Caucasian nurse who actually was involved with the child's care and treatment, and was so involved before Plaintiff even arrived that day at ORMC, was not even questioned about the child. Essentially, if any fault was to be assigned, it would be against the dark-skinned woman from the Islands, not a Caucasian, regardless of the actual facts and circumstances.

50. In sum, ORMC management created a hostile environment for Plaintiff that made it difficult for Plaintiff to perform her job, and she was portrayed as an inferior individual and an inferior nurse, when she was not.

51. Plaintiff's job is helping to save lives in the emergency room. In this regard, Plaintiff is exceptionally qualified to help save lives. She has now earned the higher level professional qualification of "Nurse Practitioner." Plaintiff's superb qualifications and professionalism are also shown by the fact that she has received two Daisy nominations, and multiple thank you letters from family members of patients she has helped care for.

***C. Retaliation***

52. On or about May 7, 2017, Plaintiff sent an e-mail to ORMC's CEO, Mr. Scott Batulis, and the ORMC Human Resources (HR) Department, complaining of the constant harassment and discrimination that Plaintiff was experiencing at the ORMC.

53. Plaintiff met with Lauren Carberry, from HR, who promised to investigate.

54. Three days later Ms. Carberry told Plaintiff that the investigation was concluded and that all Plaintiff's allegations were unfounded.

55. Ms. Carberry claimed to have investigated Plaintiff's allegations of harassment, yet basically called her a liar. She also proffered false statistics about Plaintiff's dates and performance.

56. Upon information and belief, Ms. Carberry then facilitated or caused Plaintiff to be fired, which was shortly after Plaintiff complained of being harassed by Plaintiff's manager, Robin Brennan.

57. On May 10, 2017, ORMC terminated Plaintiff's employment.

58. At that time, Plaintiff was also denied all her accrued vacation time, as well as tuition reimbursement to which she was entitled.

### *D. Breach of Contract Claim for Breach of Duty of Good Faith and Fair Dealing*

59. Upon information and belief, ORMC breached implied covenants of good faith and fair dealing.

60. This included express or implied promises regarding compensation for vacation pay and tuition reimbursement.

### *E. "Right to Sue" Letter*

61. Plaintiff has filed a timely charge of race discrimination with the Equal Employment Opportunity Commission and brings this action within ninety (90) days of the receipt of a Notice of Right To Sue, issued by the EEOC by letter dated October 10, 2017, a copy of which is attached hereto as Exhibit "1".

**FIRST CLAIM FOR RELIEF—**
**RACE, SKIN COLOR AND NATIONAL ORIGIN DISCRIMINATION,**
**AND RETALIATION,**
**IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C.§ 2000e**

62. Plaintiff repeats and reiterates each of the allegations above as if repeated here at length.

63. Plaintiff is an Afro-American from Panama with dark skin color, who had excellent job performance yet discriminated against on the basis of her race/ethnicity/national origin and skin color.

64. Defendant's justification for Plaintiff's termination was, upon information and belief, pretextual and a sham.

65. As a proximate result of Defendants' actions, Plaintiff has been unable, despite reasonable efforts, to find comparable employment replacing her ORMC employment

66. As a further proximate result of Defendants' discrimination against Plaintiff, she has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

67. As a further proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

68. Plaintiff has been damaged thereby.

69. The conduct of Defendants was wanton, outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

**SECOND CLAIM FOR RELIEF—**
**RACIAL DISCRIMINATION AND RETALIATION IN TERMINATION OF EMPLOYMENT**
**IN VIOLATION OF THE CIVIL RIGHTS ACT of 1866, 42 U.S.C. § 1981**

70. Plaintiff repeats and reiterates each of the allegations above as if repeated here at length.

71. The Civil Rights Act of 1866, 42 U.S.C. § 1981, protects individuals from employment discrimination and interference with contract (including at will contracts and union CBAs) based upon race.

72. Plaintiff is a non-white woman discriminated against in the terms and conditions of her

employment contract with Defendant on account of race.

73. Plaintiff has been damaged thereby.

74. The conduct of defendants was wanton, outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling plaintiff to an award of punitive damages.

**THIRD CLAIM FOR RELIEF—**
**RETALIATION IN VIOLATION OF**
**42 U.S.C. § 2000e and § 1981**

75. Plaintiff repeats and reiterates each of the allegations above as if repeated here at length.

76. Plaintiff reported and objected to unlawful discrimination against Plaintiff and others, and had an objective and reasonable belief that defendant was engaged in conduct unlawful under Title VII and § 1981.

77. Plaintiff opposed such unlawful conduct by making good faith claims or complaints of unlawful discrimination to defendant.

78. As a consequence, defendant engaged in adverse treatment of plaintiff.

79. Plaintiff was damaged thereby.

**FOURTH CLAIM FOR RELIEF—**
**SUPPLEMENTAL STATE LAW CLAIMS**

80. Plaintiff repeats and reiterates each of the allegations above as if repeated here at length.

81. Defendants' disparate treatment of Plaintiff on the basis of her race and national origin was in violation of the New York State Human Rights Law. *See*, N.Y.S. Exec. Law § 296 *et seq*.

82. Defendants' breach of its express or implied promises to pay Plaintiff for a) accrued vacation pay and b) tuition reimbursement, without just cause, was a breach of contract.

83. Plaintiff was damaged thereby.

**DEMAND FOR JURY**

*Plaintiff hereby demands trial by jury in this action.*

WHEREFORE, Plaintiff prays that this Court grant judgment containing the following relief:

a) An award of plaintiff's actual damages in an amount to be determined at trial for loss of wages, benefits, vacation time accruals, tuition reimbursement, and promotional opportunities, including back pay, and also an award of back pay and front pay compensating plaintiff for loss of past and future salary and benefits;

b) An award of damages to be determined at trial to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury;

c) An award of punitive damages;

d) An order enjoining defendants from engaging in the wrongful practices alleged herein and to reinstate Plaintiff's employment with Defendant;

e) An award of reasonable attorneys' fees and the costs of this action; and

f) Such other and further relief as this Court may deem just and proper.

Dated: Stony Point, New York
January 11, 2018

____________/S/_______________

MICHAEL D. DIEDERICH, JR.
*Attorney for Plaintiff MD 2097*
361 Route 210
Stony Point, NY 10980
(845) 942-0795
Mike@DiederichLaw.com

Attachment:
Exhibit "1" – EEOC Right to Sue Letter

EEOC Form 161 (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: **Alba Borrelli**
**1095 Route 32**
**Highland Mills, NY 10930**

From: **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| **520-2017-03225** | **Carlos Jacome, Investigator** | **(212) 336-3756** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Kevin J. Berry

**Kevin J. Berry,**
**District Director**

10/10/17
*(Date Mailed)*

Enclosures(s)

cc:

**Director**
**Human Resources**
**ORANGE REGIONAL MEDICAL CENTER**
**707 East Main Street**
**Middletown, NY 10940**

**Michael D. Diederich, Jr.**
**361 Route 210**
**Stony Point, NY 10980**

COMPLAINT EXHIBIT "1"